01

02

03

04                          UNITED STATES DISTRICT COURT
                         FOR THE EASTERN DISTRICT OF CALIFORNIA
05

06   HERMAN GARCIA SANDOVAL,              )
                                          )
07          Petitioner,                   )    CASE NO. 2:07-cv-00004-RSM-JLW
                                          )
08          v.                            )
                                          )
09   MIKE MARTEL, Warden,                 )    REPORT AND RECOMMENDATION
                                          )
10          Respondent.                   )
     _____      )
11

12          I.      INTRODUCTION

13          Petitioner Herman Sandoval is currently incarcerated at the Mule Creek State Prison,

14   in Ione, California.  He was convicted by a jury in the Sacramento County Superior Court on

15   March 4, 2005, of committing sexual offenses against two boys under the age of fourteen,

16   M.M. and J.S., in October 2003 and April 1998, respectively.  Specifically, petitioner was

17   convicted of one count of committing a lewd and lascivious act on a child, four counts of

18   forcefully committing lewd and lascivious acts on a child, and having committed the charged

19   offenses against two or more victims.  He is currently serving a sentence of thirty-years-to-

20   life, and has filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2254

21   challenging his 2005 conviction and sentence.  (*See* Docket 38.)

22

01      Respondent has filed an answer to the second amended petition in which he concedes

02 that petitioner has exhausted his state court remedies, but contends that petitioner's claims are

03 without merit.  (*See* Dkt. 41 at 2-3.)  Petitioner filed a traverse in opposition to the answer.

04 (*See* Dkt. 47.)  Accordingly, the briefing is now complete and this matter is ripe for review.

05 *See* Rule 5(e), Rules Governing Section 2254 Cases.  The Court, having thoroughly

06 considered the record, recommends the Court deny the second amended petition and dismiss

07 this action with prejudice.

08      II.      FACTUAL AND PROCEDURAL HISTORY

09      Petitioner is challenging his 2005 conviction for four counts of forcefully committing

10 lewd and lascivious acts on a child, J.S., and having committed the charged offenses against

11 two or more victims.  While he was also convicted of one count of forcefully committing a

12 lewd and lascivious act on a child under age fourteen, M.M., that count is not at issue in this

13 petition.  Petitioner received an indeterminate sentence of thirty-years-to-life in prison.

14      The California Court of Appeal summarized the facts of the offense against J.S.,

15 noting, as in this case, that the facts of the M.M. molestation were not at issue in the state

16 court petition and therefore it did not need to address them:

17          J.S. was 19 years old when he testified and 13 years old at the
            time of the offenses.  When he was 13, he lived with his father
18          and worked at the father's produce stand at a flea market.
            While at the market, J.S. met defendant who was a friend of his
19          father.

20          On April 19, 1998, after obtaining the father's permission,
            defendant hired J.S. to mow his lawn and help him clean up his
21          residence.  J.S. left the flea market and went with defendant in
            his truck.  As he drove, defendant asked J.S. if he wanted to
22          drink beer, smoke cigarettes, and watch dirty movies.  Even
            though he wasn't really interested, J.S. said yes because

01  defendant was bigger than him and he did not want to make
    defendant mad.

02

03  No one was at defendant's residence when they arrived. They
    went inside and started talking and watching television.  At
    defendant's request, J.S. stood up.   Defendant pulled down

04  J.S.'s pants and underwear and started to play with J.S.'s penis.
    Defendant pulled down his own pants, pushed or tossed J.S.

05  onto the couch, and began rubbing his penis against J.S.'s penis
    and stomach.  Defendant was on top of J.S., making a humping

06  motion, sucking on J.S.'s lip, trying to kiss him, and not saying
    anything.  Defendant tried to put his tongue in J.S.'s mouth, but

07  J.S. kept it tightly closed.   J.S. was unable to get up off the
    couch because defendant was too heavy.

08

09  After about five minutes on the couch, defendant took J.S. to
    the bedroom.  Defendant told J.S. to lie down and got on top of
    him.  Defendant rubbed his penis on J.S.'s penis and stomach

10  and tried to kiss him.  J.S. did not have any bruises or marks,
    and he testified that defendant was not trying to hurt him.

11

12  J.S. told defendant that he had to return to the flea market
    because his father would be worried.  Defendant said okay and
    got off of him.  They went to the living room where defendant

13  gave J.S. a root beer.  Defendant acted as if everything were
    fine.

14

15  On the way back to the flea market, defendant asked J.S.
    whether the acts felt good, whether he had liked them, and
    whether he would tell anyone about it.   J.S. told him no,

16  because he was scared and did not want defendant to hurt him.
    Defendant asked J.S. if he wanted anything, and J.S.

17  sarcastically said, "five hundred dollars."  J.S. denied that this
    request was a threat to "accuse him of something that he didn't

18  do" if the money were not paid.  Defendant gave J.S. $1.50 or
    $2.00 and told him that he could drive defendant's truck any

19  time he wanted.

20  When defendant dropped off J.S. at his father's stand, he again
    asked if J.S. was going to tell anyone.   J.S. said no and

21  defendant left.  J.S. then told his father that defendant had
    rubbed and touched him.  At first, the father did not believe

22  him.

01      The father testified that when J.S. returned to the flea market, he
        was highly upset and very close to tears.  The father had never
02      seen J.S. so mad.  The father tried to find out what was wrong
        but J.S. did not want to tell him.  J.S. went to the back of the
03      fruit stand to calm down.  Defendant hastily arrived and tried to
        push some money into J.S.'s pocket.  J.S. again became irate.
04      Eventually, defendant left.

05      Later that afternoon, J.S. revealed to his friend, Patty, that
        defendant had pulled down J.S.'s pants, tried to grab J.S.'s
06      penis, and tried to rub J.S.'s penis on him. J.S. and Patty
        reported the incident to a sheriff's officer.  J.S. did not see
07      defendant after that day.

08      In February 1999, when J.S. was 14 years old, he suffered
        juvenile adjudications for residential burglary and attempted
09      residential burglary. When he was 16 years old, he left
        California for Texas because he was getting in trouble here.
10
        At trial, Deputy Sheriff Robert Wilson testified to what J.S. had
11      told him when he took the report.  J.S. had not mentioned a
        specific number of times that defendant had rubbed his penis on
12      J.S.'s body. J.S. had described the initial activity as a
        "continuous humping motion."  He had related a total of "two
13      separate incidences," both of which had occurred on the couch.
        J.S. had not mentioned going into the bedroom.  J.S. explained
14      at trial that he had left that part out so that the police would not
        think he wanted to participate.
15
        Deputy Wilson testified for the defense that J.S. had not
16      reported that defendant touched J.S. before pushing him onto
        the couch.  Rather, the only reported contact occurred when J.S.
17      was lying on the couch.

18      The security manager for defendant's cable television company
        testified that defendant did not subscribe to an adult
19      entertainment channel.

20  (Dkt. 38, Exh. A at 2-5.)

21          A jury found petitioner guilty of committing a lewd and lascivious act on a child under

22  age 14 (Count I), and forcefully committing lewd and lascivious acts on a child under age 14

REPORT AND RECOMMENDATION - 4

01   (Counts II-V).  (*See* Dkt. 41 at 5.)  Pursuant to an amended information, the jury also found

02   true the special allegations that petitioner committed the charged offenses against more than

03   one victim.  (*See id.*)  He was sentenced to an indeterminate sentence of thirty-years-to-life on

04   Counts I and II (two consecutive terms of fifteen-years-to-life), and concurrent terms of six

05   years each on Counts III - V.  (*See id.*)

06          Petitioner timely appealed his conviction and sentence to the California Court of

07   Appeal, raising one of the issues presented in this federal habeas petition.  (*See* Dkt. 38, Exh.

08   A.)  The Court of Appeal affirmed the trial court's judgment in an unpublished decision on

09   August 24, 2006.  (*See id.*)  Petitioner filed a petition for review in the California Supreme

10   Court which was summarily denied.  (*See id.*, Exh. B.)

11          On January 3, 2007, petitioner filed a petition for habeas corpus in this Court, although

12   he admitted that he had not yet exhausted all of his claims.  (*See* Dkt. 1.)  He therefore

13   requested that the Court stay his case and hold his petition in abeyance until he exhausted his

14   state court remedies.  (*See id.*)  Petitioner's request for a stay was granted by the Honorable

15   Kimberly J. Mueller on October 9, 2007.  (*See* Docket 15.)

16          Petitioner then filed a habeas corpus petition in the Sacramento County Superior

17   Court, which was denied on May 4, 2007, pursuant to a reasoned decision.  (*See* Dkt. 38, Exh.

18   E.)  Petitioner subsequently filed a petition with the California Supreme Court.  (*See id.*, Exh.

19   Q.)  The California Supreme Court later granted petitioner's request to withdraw that petition.

20   (*See id.*, Exh. D.)  Petitioner filed a new habeas corpus petition in the state's highest court on

21   March 28, 2008.  That case was summarily denied on September 10, 2008.  (*See id.*)

22

01        Because petitioner represented that he had exhausted his state court remedies, the stay

02    in this Court was lifted and petitioner was permitted to file an amended petition incorporating

03    his newly exhausted claims.  (*See* Dkts. 20 and 22.)  Less than a month later this case was

04    transferred to the Honorable Robert S. Lasnik.  (*See* Dkt. 21.)  The case was subsequently

05    reassigned to the Honorable Ricardo S. Martinez, and on October 1, 2009, this case was

06    referred to the undersigned.  (*See* Dkts. 23 and 30.)

07        Meanwhile, petitioner filed another habeas petition in the California Supreme Court

08    on June 25, 2009.  (*See* Dkt. 43, Lodged Document 10.)  While that petition was pending,

09    petitioner filed multiple requests for a second stay and abeyance to pursue his additional

10    claims for relief.  (*See* Dkts. 26-28 and 31.)  On October 22, 2009, this Court struck three of

11    petitioner's four pending motions for a stay and abeyance and directed respondent to file a

12    response to petitioner's fourth request for a stay.  (*See* Dkt. 32.)  The California Supreme

13    Court summarily denied his petition on November 10, 2009.  On December 8, petitioner filed

14    objections to respondent's response, informing the Court that he had exhausted all of his state

15    court remedies as to all of his federal claims for relief.  (*See* Dkt. 34.)  He also renewed his

16    request for a stay on the ground that he required additional time to file a second amended

17    petition, incorporating the additional recently exhausted claims for relief.  (*See id.*)

18        By Order of December 14, the Court struck petitioner's fourth request for a stay and

19    abeyance as moot and gave petitioner 90 days to file a second amended petition incorporating

20    all of his exhausted federal habeas claims for relief.  (*See* Dkt. 35.)  A subsequent thirty-day

21    extension of time was granted and petitioner filed his second amended petition on March 29,

22    2010, presenting four claims for relief.  (*See* Dkts. 37 and 38.)

01        III.    FEDERAL CLAIMS FOR RELIEF[1]

02        Petitioner presents the following claims in his second amended petition:

03              1.   The admission of other crimes evidence was erroneous
                     under Evidence Code Sec. 1101, sub. (b) an abuse of
04                   Evidence Code Sec. 352 Discretion, and a violation of due
                     process applied;
05
06              2.   The revival of a time barred charge violated the Ex Post
                     Facto Clause of the United States Constitution;

07              3.   The judgment must be reversed because the corroboration
                     requirement of Sec. [803](g) has not been met;
08
                4.   The denial of jury trial on aggravating and mitigating factors
09                   affecting the sentence violated the Fifth, Sixth, and
                     Fourteenth Amendments;
10
                5.   Petitioner was denied due process of law; and
11
12              6.   Ineffective assistance of trial counsel.

        (Dkt. 38 at i.)
13
        Respondent appears to concede that petitioner has exhausted all of his claims for
14
        relief, but contends that petitioner fails to demonstrate that the state courts either made an
15
        unreasonable factual determination or failed to comply with clearly established U.S. Supreme
16
        Court precedent in rejecting his claims.  (*See* Dkt. 41 at 2-3.)
17
        IV.    STANDARD OF REVIEW
18
        The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this
19
        second amended petition as it was filed after the enactment of AEDPA.  *See Lindh v. Murphy*,
20

21        _____
                [1] We do not reach petitioner's claims that his state rights under the California Constitution
22        were violated, as state claims are not cognizable in a federal habeas petition. *See Estelle v. McGuire*,
          502 U.S. 62, 67-68 (1991) (asserting that "it is not the province of a federal habeas court to reexamine
          state-court determinations on state-law questions").

REPORT AND RECOMMENDATION - 7

01  521 U.S. 320, 326-27 (1997).  Because petitioner is in the custody of the California

02  Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the

03  exclusive vehicle for his habeas petition.  *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th

04  Cir. 2004).  Under AEDPA, a habeas petition may not be granted with respect to any claim

05  adjudicated on the merits in state court unless petitioner demonstrates that the highest state

06  court decision rejecting his petition was either "contrary to, or involved an unreasonable

07  application of, clearly established Federal law, as determined by the Supreme Court of the

08  United States," or "was based on an unreasonable determination of the facts in light of the

09  evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1) and (2).

10        As a threshold matter, this Court must ascertain whether relevant federal law was

11  "clearly established" at the time of the state court's decision.  To make this determination, the

12  Court may only consider the holdings, as opposed to dicta, of the United States Supreme

13  Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  It is also appropriate to look to

14  lower federal court decisions to determine what law has been "clearly established" by the

15  Supreme Court and the reasonableness of a particular application of that law.  *See Duhaime v.*

16  *Ducharme*, 200 F.3d 597, 598 (9th Cir. 1999).  In this context, Ninth Circuit precedent

17  remains persuasive but not binding authority.  *See Williams*, 529 U.S. at 412-13; *Clark v.*

18  *Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

19        The Court must then determine whether the state court's decision was "contrary to, or

20  involved an unreasonable application of, clearly established Federal law."  *See Lockyer v.*

21  *Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may

22  grant the writ if the state court arrives at a conclusion opposite to that reached by [the

01   Supreme] Court on a question of law or if the state court decides a case differently than [the]

02   Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

03   "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

04   state court identifies the correct governing legal principle from [the] Court's decisions but

05   unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  At all

06   times, a federal habeas court must keep in mind that it "may not issue the writ simply because

07   [it] concludes in its independent judgment that the relevant state-court decision applied clearly

08   established federal law erroneously or incorrectly.  Rather that application must also be

09   [objectively] unreasonable." *Id.* at 411.

10        In each case, the petitioner has the burden of establishing that the state court decision

11   was contrary to, or involved an unreasonable application of, clearly established federal law.

12   *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine

13   whether the petitioner has met this burden, a federal habeas court normally looks to the last

14   reasoned state court decision, which in this case is the Sacramento County Superior Court

15   decision's decision on one issue presented in his federal habeas petition.  *See Ylst v.*

16   *Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir.

17   2007).  Where, as in this case, the state courts have reviewed the claims and denied them

18   without comment, the federal court conducts an independent review of the record "to

19   determine whether the state court clearly erred in its application of controlling federal law."

20   *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000).

21        Finally, AEDPA requires federal courts to give considerable deference to state court

22   decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).

01 Federal courts are also bound by a state's interpretation of its own laws. *See Murtishaw v.*

02 *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme*, 998 F.2d 710, 713

03 (9th Cir. 1993)).   Thus, while our review of the record is conducted independently with regard

04 to some claims, we continue to show deference to the state court's ultimate decision.  *See*

05 *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

06        V.        DISCUSSION

07        1.        *Due Process Violation -- Admission of Other Crimes Evidence*

08        Petitioner contends that his federal due process rights were violated when the trial

09 court admitted evidence of his uncharged 1998 sexual offense with J.S. under California

10 Evidence Code §§ 1101, 1108 and 352, and subsequently instructed the jury to consider such

11 evidence.  (*See* Dkt. 38 at 1-7.)  Respondent asserts that while the California Supreme Court

12 summarily dismissed this claim, it was properly rejected as "[t]here is nothing in the record to

13 suggest the prosecution ever sought to introduce additional 'other crimes' evidence with

14 respect to crimes Petitioner may have committed against victim Joseph S. in 1998 or any

15 other time." (Dkt. 41 at 10.)  Because there is no factual support for petitioner's claim,

16 respondent contends the state court's rejection of this claim was reasonable.  (*See id.*)

17        Counts II-V charged petitioner with forcefully committing lewd and lascivious acts

18 upon thirteen-year-old Joseph S. "on or about April 19, 1998."  (Dkt. 43, Clerk's Transcript at

19 88-91 and 108-09.)  There is no evidence in the record before this Court that the prosecution

20 sought to introduce evidence of any sexual offenses committed by petitioner against J.S.,

21 other than the charged offenses which took place "on or about April 19, 1998." (Dkt. 43,

22 Reporter's Transcript at 336-382; *id.*, CT at 108-09.)  Specifically, no "other crimes" evidence

01  involving uncharged offenses committed by petitioner against J.S. was discussed during the

02  pre-trial motions, admitted at trial, or discussed in the jury instructions.  (*See id.*, RT at 1-11

03  and 336-382; *id.*, CT 103-117.)

04        Because there is no "other crimes" evidence with regard to the 1998 charged offenses,

05  this Court cannot conclude that the California Supreme Court's decision was contrary to or an

06  unreasonable application of clearly established Supreme Court law.  I therefore recommend

07  the Court find that petitioner's "other crimes evidence" claim is without merit.

08        2.     *Ex Post Facto Clause Violation (Cal. Pen. Code § 803(g))*

09        Petitioner contends that his 1998 offense was time-barred by California's statute of

10  limitations and, thus, his prosecution for such offense violated the Ex Post Facto Clause of the

11  United States Constitution.  (*See* Dkt. 38 at 10 -11.)  *See also* U.S. CONST., art. I, § 10 ("No

12  state shall . . . pass any bill of attainder, ex post facto law, or law impairing the obligation of

13  contracts. . . .").  Specifically, he claims that California Penal Code § 803(g), which extends

14  the state's statute of limitations for sexual offenses with minors, violates the Ex Post Facto

15  Clause on its face by reviving time-barred offenses.  (*See id.*)  Respondent asserts that the

16  state court's summary rejection of petitioner's claim was proper, that the Ninth Circuit Court

17  of Appeals has previously rejected this precise claim, and that no federal law holds to the

18  contrary.  (*See* Dkt. 41 at 11-12.)  Because the California courts failed to issue a reasoned

19  decision on this issue, this Court must independently review the record and the federal law to

20  determine whether the state courts' decision was reasonable in light of clearly established

21  U.S. Supreme Court law.  *See Delgado*, 223 F.3d at 982.

22

01        The Ninth Circuit Court of Appeals recently upheld the constitutionality of California

02   Penal Code § 803(g) against the same Ex Post Facto Clause challenge petitioner presents in

03   his petition based upon a careful analysis of U.S. Supreme Court case law.  *Renderos v. Ryan*,

04   469 F.3d 788, 795 (9th Cir. 2006), *cert. denied*, 551 U.S. 1159 (2007) (citing *Stogner v.*

05   *California*, 539 U.S. 607 (2003)).  Here, as in *Renderos*, petitioner contends that the

06   applicable six-year limitations period in Cal. Pen. Code § 800 expired prior to the date the

07   information was amended to include his April 19, 1998, offense.  (*See* Dkt. 38 at 10.)  The

08   application of § 803(g)[2] revives the expired six-year statute of limitations period and allows

09   the prosecution to charge a defendant with an offense that is more than six-years-old.  Section

10   803(g) states:

                (1) Notwithstanding any other limitation of time described in
                this chapter, a criminal complaint may be filed within one year
                of the date of a report to a California law enforcement agency
                by a person of any age alleging that he or she, while under the
                age of 18 years, was the victim of a crime described in Section
                261, 286, 288, 288a, 288.5, 289, or 289.5.

                (2) This subdivision applies only if all of the following occur:

                (A) The limitation period specified in Section 800, 801, or
                801.1, whichever is later, has expired.

                (B) The crime involved substantial sexual conduct, as described
                in subdivision (b) of Section 1203.066, excluding masturbation
                that is not mutual.

                (C) There is independent evidence that corroborates the victim's
                allegation. If the victim was 21 years of age or older at the time

---

        [2] This statute was amended in 2005 to delete "the old subsection (f) and renumber the old
subsection (g) as subsection (f) without any substantive alterations."  *Renderos*, 469 F.3d at 793 n.3.
Thus, while the subsection at issue is currently subsection (f), for the sake of clarity, the Court refers
to this subsection (as the parties have) in its pre-amendment form, as subsection (g).  *See id.*

REPORT AND RECOMMENDATION - 12

01      of the report, the independent evidence shall clearly and
       convincingly corroborate the victim's allegation.

02

03      (3) No evidence may be used to corroborate the victim's
       allegation that otherwise would be inadmissible during trial.
       Independent evidence does not include the opinions of mental

04      health professionals.

05 Thus, this subsection only applies to charges in which the original period under §§ 800 or 801

06 has run, and it only tolls such statutes of limitation where all the criteria are met.  *See* Cal.

07 Pen. Code § 803(g)(2)(A), (B), and (C).

08    In evaluating a similar provision of § 803, the Supreme Court held that the critical

09 question in this context is whether "the amendment in question became effective after the

10 statute of limitations expired."  *Renderos*, 469 F.3d at 795 (citing *Stogner*, 539 U.S. at 618-

11 19).  "[A] law enacted after expiration of a previously applicable limitations period violates

12 the *Ex Post Facto* Clause when it is applied to revive a previously time-barred prosecution."

13 *Stogner*, 539 U.S. at 632-33.  However, the State is not prevented "from extending time limits

14 for future offenses, or for prosecutions not yet time barred."  *Id.* at 632.

15    Here, the statute extending the limitations period went into effect in January 1994 –

16 four years before petitioner committed the 1998 offenses.  The State's extension of the six-

17 year statute of limitations was therefore permissible as it was an extension of time for a future

18 offense (one not yet committed) and for a prosecution that was not yet time barred (again,

19 because the crime had not yet been committed).  *See id.* at 618-19.  *See also People v.*

20 *Robertson*, 113 Cal.App.4th 389, 309-310 (2004) (upholding the constitutionality of § 803(g)

21 on the ground that "the statute of limitations in count I had not expired when this section went

22 into effect in 1994, the defendant was properly prosecuted under this new statute extending

01 the statute of limitations") (citing *Stogner*, 539 U.S. at 618); *Summers v. Adams*, 2010 WL

02 358963 (C.D. Cal. Jan. 7, 2010) (unpublished) (the same).

03       In addition, petitioner appears to misunderstand the relevant period of limitations as he

04 concedes in his second amended petition that only five years and eight months had elapsed

05 between the time he was accused and arrested for the crimes against J.S. (April 19, 2008) and

06 the time he was charged with those crimes (December 30, 2003).  (*See* Dkt. 38 at 24.)

07 Because the initial six-year statute of limitations period under § 800 had not yet run when

08 petitioner was charged for the crimes against J.S, it does not appear to have been necessary to

09 apply the tolling provision in § 803(g).

10       Regardless, this Court cannot conclude under either analysis that the California

11 Supreme Court's decision was contrary to or an unreasonable application of clearly

12 established Supreme Court law as such case law supports the holding that § 803(g) is

13 constitutionally valid when applied to unexpired statutes of limitations.  The Court declines

14 petitioner's invitation to revisit the state court's holding in *Robertson* on the same grounds, as

15 we are bound by the U.S. Supreme Court's decision in *Stogner*.  (*See* Dkt. 38 at 11.)  I

16 therefore recommend the Court find that petitioner's Ex Post Facto Clause challenge is

17 without merit.

18       3.     *Due Process Clause Violation (Cal. Pen. Code § 803(g))*

19       Petitioner contends that even if this Court finds § 803(g) constitutional, the

20 prosecution violated his federal due process rights when it failed to "clearly and convincingly

21 corroborate the victim's allegation."  (Dkt. 38 at 11-15.)  Respondent, citing *Renderos*, asserts

22 this claim is without merit on the ground that "[n]o clearly established Supreme Court

01  authority requires a state to provide corroborating evidence of a victim's account in order to

02  toll or extend the statute of limitations for charging an offense." (Dkt. 41 at 12.)  Petitioner

03  properly presented this claim to the California Supreme Court and it was summarily denied.

04  This Court therefore conducts an independent review of the record to determine whether the

05  state courts erred in its application of controlling federal law.  *See Delgado*, 223 F.3d at 982.

06      Petitioner and respondent both rely upon the Supreme Court's decision in *In Re*

07  *Winship* for the proposition that the due process clause requires a specific quantum of proof.

08  (*See id.* and Dkt. 38 at 12.)  The Court in *Winship* addressed the level of proof required to

09  convict a juvenile offender in juvenile court, but limited its holding to whether such elements

10  needed to be proven *beyond a reasonable doubt*.  397 U.S. 358, 364 (1970).  Respondent's

11  reliance upon *Renderos* also appears misplaced, as the petitioner in that case claimed that

12  because the California courts have treated statute of limitations as an element of the offense,

13  they must also be proven beyond a reasonable doubt.  469 F.3d at 796-97.  Petitioner in this

14  case contends there was insufficient evidence to corroborate the victim's allegations based

15  upon the clear and convincing evidence standard set forth in § 803(g).  (*See* Dkt. 38 at 14.)

16      Petitioner fails to identify, and this Court is not aware of, any U.S. Supreme Court

17  precedent that either identifies the appropriate evidentiary standard, or even assuming the

18  "clear and convincing evidence" standard is appropriate, defines the meaning of that standard

19  in the statute of limitations context. In particular, what is unclear from the statute and relevant

20  case law is what standard of review applies in cases such as this one, where both victims

21  reported the incidents when they were under 21 years of age.

22

01      The Court in *Renderos* held the preponderance of the evidence standard is appropriate

02 when addressing tolling provisions.  The Ninth Circuit explicitly stated there that "[t]he

03 findings necessary to trigger § 803(g) do not fall within the due process penumbra expounded

04 in *In Re Winship*, and no subsequent case has so expanded it."  *Renderos*, 469 F.3d at 797

05 (citing *In Re Winship*, 397 U.S. at 364 and *United States v. Gonsalves*, 675 F.2d 1050, 1054

06 (9th Cir. 1982) (holding that the [a] major reason for adhering to the 'reasonable doubt'

07 standard is absent . . . when the evidence offered to prove a defense is unrelated to the issue of

08 guilt.")  Petitioner claims the use of the "clear and convincing" evidence standard is

09 appropriate, and the state courts appear to concur.  *See People v. Mabini*, 92 Cal.App.4th 654,

10 659-63 (2001); *People v. Preciado*, 2004 WL 2153627 1, *8 (Cal. App. 2004) (unpublished).

11 Because petitioner's claim fails under either standard, we address it under the stricter clear

12 and convincing evidence standard.  In so doing, the Court looks to the California state courts

13 for a workable definition of "clear and convincing" evidence in this context.  (*See id.* at 12-

14 13.)

15      The California Court of Appeal has acknowledged that it has provided varying

16 definitions of "clear and convincing evidence" under § 803(g), and as a result, "the proper

17 meaning of 'clear and convincing evidence' can be settled only by our Supreme Court,"

18 which has not yet considered the issue.  *Mabini*, 92 Cal.App.4th at 660.  Despite the slight

19 variations in the definitions set forth by the California Court of Appeal, however, the state

20 court has consistently found that evidence that a defendant "committed [other] offenses of the

21 character charged in the information against the victim whose testimony is being

22 corroborated" can constitute "independent" and "clear and convincing" corroboration under

REPORT AND RECOMMENDATION - 16

01   § 803(g)'s standard of proof.  *Preciado*, 2004 WL 2153627 at *8.  In fact, the California

02   Court of Appeal has held that even uncharged sexual abuse, if it was sufficiently similar to the

03   charged acts, may be used to corroborate alleged sexual abuse under § 803(g), because "the

04   precise probative value to be accorded this evidence will depend on various considerations,

05   such as the frequency of the charged acts and their similarity and temporal proximity to the

06   charged acts."  *People v. Yovanov*, 69 Cal.App.4th 392, 404 (1999) (noting that it "need not

07   decide whether the evidence of [the defendant's] uncharged sexual misconduct, standing

08   alone, would constitute clear and convincing corroborative evidence. . . ."); *Mabini*, 92

09   Cal.App.4th at 659 (subsequently holding that "such evidence, if credited by the trier of fact,

10   may standing alone constitute independent evidence that clearly and convincingly

11   corroborates the victim's allegation.")

12          For example, the court held in *Mabini* that where the uncharged offenses occurred at

13   the same location, during roughly the same time period, the victims "were similar in age when

14   they were molested," and "the offenses involved similar behavior" by defendant, the evidence

15   of the defendant's molestation of other victims provided sufficient corroboration of the

16   charged offenses under § 803(g)'s standard of proof.  *Mabini*, 92 Cal.App.4th at 659.  *See*

17   *also Preciado*, 2004 WL 2153627 at *8 (holding that although evidence that defendant abused

18   his male child almost a decade after he abused his female child may not be sufficient

19   corroboration of the female child's allegations, an admission by defendant of molestation

20   "during the very period she says the charged offense happened" is "powerful" evidence that

21   clearly and convincingly corroborates the victim's allegation under 803(g)).

22

01          Similarly, this Court finds that the circumstances of petitioner's molestation of M.M.,

02   a charged offense that petitioner does not challenge in these proceedings, were sufficiently

03   similar to J.S.'s molestation allegations to provide "independent" and "clear and convincing"

04   corroboration under § 803(g)'s standard of proof even though the offenses took place

05   approximately five years apart.  *See Mabini*, 92 Cal.App.4th at 659.  Specifically, both M.M.

06   and J.S. were thirteen-year-old boys at the time of the offenses; petitioner asked both victims'

07   parents for permission to "hire" the boys to do some work around petitioner's house and/or

08   flea market in exchange for money; both victims allege that petitioner initiated the

09   molestation when they were alone with petitioner near his living room couch; and both

10   victims allege that the molestation began with petitioner silently removing their pants and

11   rubbing their penises with one hand.  (*See* RT 24-113; RT at 333-370.)  As in *Mabini*,

12   petitioner's molestation of M.M. and J.R. "shared many similarities," and this Court

13   concludes that J.S.'s molestation allegations were clearly and convincingly corroborated by

14   the uncontested evidence of petitioner's molestation of M.M.  *Mabini*, 92 Cal.App.4th at 659.

15          Accordingly, even if the Due Process Clause requires the state courts to find "clear

16   and convincing" evidence to collaborate J.S.'s molestation allegations under § 803(g)'s

17   standard of proof, there was ample evidence in the record to satisfy this requirement.  I

18   therefore recommend the Court find that petitioner's due process claim is without merit.

19          4.       *Fifth, Sixth, and Fourteenth Amendment Violations*

20          Petitioner contends the trial court violated his Fifth, Sixth and Fourteenth Amendment

21   rights and the Supreme Court's holding in *Blakely v. Washington*, 542 U.S. 296 (2004), by

22   imposing consecutive and upper terms based upon facts not found by the jury.  (Dkt. 38 at 15-

01  21.)  Respondent asserts that petitioner was properly sentenced by the jury and that no

02  constitutional violation occurred.  (*See* Dkt. 41 at 13-14.)

03       Petitioner properly presented this claim to the California Supreme Court and it was

04  summarily denied.  This Court therefore conducts an independent review of the record to

05  determine whether the state courts erred in its application of controlling federal law.  *See*

06  *Delgado*, 223 F.3d at 982.

07            A.       Sentence with Consecutive Terms

08       Petitioner was sentenced to consecutive indeterminate terms of fifteen years to life on

09  Counts I and II, totaling an indeterminate term of thirty-years-to-life.

10       The Sixth Amendment to the U.S. Constitution, applicable to the states through the

11  Fourteenth Amendment, guarantees a criminal defendant the right to a trial by jury.  *Duncan*

12  *v. Louisiana*, 391 U.S. 145, 149-50 (1968).  Ten years ago, the Supreme Court explained that

13  this right extends to any fact finding used to enhance a criminal defendant's sentence above

14  the statutory maximum for charged offense.  *Apprendi v. New Jersey*, 530 U.S. 466, 490

15  (2000).  "Other than the fact of a prior conviction, any fact that increases the penalty for a

16  crime beyond the prescribed statutory maximum must be submitted to a jury, and proved

17  beyond a reasonable doubt."  *Id.*  Five years later, the Supreme Court explained in *Blakely*

18  that "the statutory maximum for *Apprendi* purposes is the maximum sentence a judge may

19  impose solely on the basis of the facts reflected in the jury verdict or admitted by the

20  defendant.  542 U.S. at 303 (internal quotations omitted).

21       Here, petitioner claims the trial court's decision to impose consecutive rather than

22  concurrent terms for his convictions on Counts I and II violated his U.S. Constitutional rights

REPORT AND RECOMMENDATION - 19

01    under *Blakely*.  First and foremost, since petitioner's trial, the Supreme Court has held that the

02    Sixth Amendment permits states to assign the question of consecutive versus concurrent

03    sentencing to judges rather than juries.  *Oregon v. Ice,* --- U.S. ----, 129 S.Ct. 711, 714-15

04    (2009) (upholding the authority of the States to follow the common-law tradition of allowing

05    judges to decide whether to assign consecutive or concurrent sentences to defendants).  *See*

06    *also Blakely*, 542 U.S. at 309 (holding that a defendant does not have a legal right to

07    concurrent sentencing which "makes all the difference insofar as judicial impingement upon

08    the traditional role of the jury is concerned.").  *See e.g.*, *Cacoperdo v. Demosthenes*, 37 F.3d

09    504, 507 (9th Cir. 1994) ("The decision whether to impose sentences concurrently or

10    consecutively is a matter of state criminal procedure and is not within the purview of federal

11    habeas corpus."); *accord Souch v. Schaivo*, 289 F.3d 616, 623 (9th Cir. 2002) ("[b]ecause the

12    trial court actually had *absolute discretion* to impose either consecutive or concurrent

13    sentences[,] . . . neither an alleged abuse of discretion by the trial court in choosing

14    consecutive sentences, nor the trial court's alleged failure to list reasons for imposing

15    consecutive sentences, can form the basis for federal habeas relief.")

16         Even if petitioner's claim is cognizable in this case, it is without merit because

17    California law does not require any factual findings to impose consecutive terms.  *See e.g.,*

18    *People v. Black*, 41 Cal.4th 799, 820-21 (2007), *cert. denied*, 128 S.Ct. (2008) (holding "that

19    imposition of consecutive terms under section 669 does not implicate a defendant's Sixth

20    Amendment rights.").

21         Accordingly, the trial court's decision to assign petitioner to consecutive rather than

22    concurrent sentences was constitutional and consistent with Supreme Court case law.

01                     B.      Alleged "Upper Term" Sentence

02          Petitioner also contends the trial court erred when it sentenced petitioner to the upper

03   term instead of the middle term on Count I, in violation of his Sixth Amendment rights under

04   *Blakely*.  (*See* Dkt. 38 at 18-19.)  While respondent's answer addressed this claim with regard

05   to Counts III-V, his argument is generally correct.  (*See* Dkt. 41 at 14.)

06          Petitioner was not sentenced to an upper term.  He was sentenced pursuant to the

07   statutory presumption set forth in Cal. Pen. Code § 667.61 based upon facts submitted to the

08   jury.  While many of California's criminal sentencing statutes do have lower, middle, and

09   upper terms, the statute under which petitioner was sentenced only includes two statutorily

10   mandated sentencing options.  California law mandated petitioner's fifteen-years-to-life term

11   on Count I based upon the jury's findings and this did not constitute an upper term sentence.

12   It was, in fact, the lower term under § 667.61.  Consequently, petitioner's claim does not

13   implicate his Sixth Amendment rights under Supreme Court precedent as he was sentenced at

14   the lower end of a statutorily mandated term.  *See also United States v. Booker*, 543 U.S. 220,

15   233 (2005) (the Supreme Court "has never doubted the authority of a judge to exercise broad

16   discretion in imposing a sentence within a statutory range.")

17          I therefore recommend the Court find that trial court's decision to assign petitioner to

18   the statutory sentence of fifteen-years-to life was constitutional and consistent with Supreme

19   Court law.

20          In sum, the California Supreme Court's decision regarding both of petitioner's *Blakely*

21   claims was not contrary to nor an unreasonable application of clearly established federal law.

22

REPORT AND RECOMMENDATION - 21

01          5.     *Speedy Trial Violation*

02               A.     <u>Sixth Amendment</u>

03          Petitioner contends that his Sixth Amendment right to a speedy trial was violated

04   when the State waited almost six years to file charges against him for the 1998 offenses.  (*See*

05   Dkt. 38 at 24-29.)  Respondent contends the trial court's denial of petitioner's pretrial motion

06   to dismiss on this ground, as well as the California Court of Appeal's decision regarding the

07   same issue, were both reasoned decisions consistent with clearly established Supreme Court

08   precedent.  (*See* Dkt. 41 at 15-18.)

09          In addressing this issue the California Court of Appeals found as follows:

10          Defendant contends his convictions involving J.S. and the
            multiple-victim enhancement must be reversed because the
11          delay of five years eight months between his initial arrest and
            release in April 1998 and the filing of the complaint and arrest
12          warrant in December 2003 violated due process and deprived
            him of the ability to defendant against J.S.'s accusations.  We
13          disagree.

14          Defendant raised this issue in his section 995 motion.  The trial
            court denied the motion, finding:  "With regard to the speedy
15          trial arguments, after the '98 arrest no charges were filed.  So
            under the rule of [*United States v. Marion* (1971) 404 U.S. 307,
16          318-320. . .] for purposes of the 6th Amendment, [*Barker v.
            Wingo* (1972) 407 U.S. 514. . .] issue, you look at the delay
17          after the complaint was refiled.  I will point out there is no
            declaration to support any of the allegations in the motion or the
18          opposition, but I'm going to assume the facts as stated in the
            various papers.

19
            The delay is a long one from 1998 to 2003, but in the
20          circumstances, one, there's been no showing whatsoever of
            prejudice to the defendant beyond general allegations with
21          regard to the loss of memory and possible witness
            unavailability.  And there's a compelling justification for the
22          delay in the belated filing of the complaint based on the 1998-
            alleged 1998 crimes, that is, that the charges involving another

01        victim were in the meantime filed.   And that's sufficient
          justification given the lack of any proved prejudice to justify the
02        delay."

03        Defendant claims his 1998 arrest triggered his Sixth
          Amendment speedy trial right. We disagree.   The United States
04        Supreme Court has defined the point at which the federal
          speedy trial right begins to operate: " '[I]t is either a formal
05        indictment or information or else the actual restraints imposed
          by *arrest and holding to answer a criminal charge* that engage
06        the particular protections of the speedy trial provision of the
          Sixth Amendment.' " (*People v. Martinez* (2000) 22 Cal.4th
07        750, 755, quoting *United States v. Marion, supra,* 404 U.S. at p.
          320 [30 L.Ed.2d at p. 479], italics added.)   In this case,
08        defendant had been arrested in 1998 but he was not held to
          answer any criminal charge. Thus, his federal speedy trial right
09        was not violated.

10  (Dkt. 43, LD 4 at 8-9.)

11        The California Court of Appeals is correct.  While *Marion* involved a claim of pre-

12  indictment delay, it and subsequent Supreme Court cases make clear that the length of time

13  between a dismissal and reindictment is excluded from the length of delay considered under

14  the speedy trial clause of the Sixth Amendment.  *See United States v. Loud Hawk*, 474 U.S.

15  302, 311 (1986).  After dismissal of the charges, the Court concluded, "'a citizen suffers no

16  restraints on his liberty and is [no longer] the subject of public accusation: his situation does

17  not compare with that of a defendant who has been arrested and held to answer.'"  *Id.*

18  (quoting *United States v. MacDonald*, 456 U.S. 1, 9 (1982)).  Although such defendants may

19  still be the subject of some public suspicion, because the government's desire to prosecute

20  them remains a matter of public record, their liberty remains unimpaired and they are "in the

21  same position as any other subject of a criminal investigation."  *Id.* at 311.  Thus, the Court in

22  *Loud Hawk* made clear that the distinction between a citizen against whom charges have been

REPORT AND RECOMMENDATION - 23

01  dismissed and one "who has been arrested and held to answer" is central to the speedy trial

02  inquiry, because "when defendants are not incarcerated or subjected to other substantial

03  restrictions on their liberty, a court should not weigh that time towards a claim under the

04  Speedy Trial Clause." *Id.* at 312.  *See also Marion*, 404 U.S. at 319 (making a similar

05  distinction).

06       Because petitioner was not held to answer for any charges, there was no speedy trial

07  violation under the Sixth Amendment.  The California courts' decision to deny relief as to this

08  claim was therefore consistent with and a reasonable application of clearly established

09  Supreme Court law.

10                     B.      Due Process

11       Petitioner contends that the prosecution's failure promptly to pursue charges based

12  upon his 1998 arrest violated his federal due process rights, because "actual prejudice"

13  resulted from the delay.  (*See* Dkt. 38 at 29-33.)  Specifically, he claims that his "key eye

14  witness passed away before the prosecution did file these charges," and she "would have

15  contradicted [J.S.]'s testimony and corroborated Petitioner's assertions that [J.S.] was lying.

16  She was physically present on the day Joseph was at Petitioner's home."  (*Id.* at 32.)

17       In his declaration, petitioner asserts that his elderly next door neighbor, Doris Fedor,

18  was present at petitioner's house on April 19, 1998, at the time of the alleged offense.  (*Id.*,

19  Exh. E at 1-3.)  Petitioner states, "Ms. Fedor met me in the driveway and told me she was not

20  feeling well, she had been having health issues lately and so I took this very seriously, guided

21  her to a seat on my cover[ed] front patio and stayed with her until I was sure she was okay[.]"

22  (*Id.* at 2.)  Meanwhile, "Joseph was waiting for me and becoming impatient, wanting a tour of

01    the house and Ms. Fedor assured me she was feeling better so I took him inside. . . ." (*Id.*)

02    Petitioner asserts that he gave J.S. a tour of his house and they each got a soda from the

03    kitchen, but "[w]e were in the house no more than ten minutes" while Ms. Fedor sat outside

04    on the front porch. (*Id.* at 3.)  He states that Ms. Fedor passed away on Thanksgiving Day in

05    2002. (*See id.* at 4.)  Although petitioner also attaches a declaration from Doris Fedor's

06    daughter, Wendy Fedor, her declaration does not include any information regarding her

07    mother's activities or whereabouts on April 19, 1998.  It simply expresses a belief that "if my

08    mom was alive today I know she would gladly testify on [petitioner]'s behalf" because she

09    had never voiced any concerns about petitioner's behavior. (*Id.*, Exh. M at 4.)

10       Petitioner first presented his due process claim concerning Ms. Fedor's potential

11    testimony to the California Supreme Court on March 28, 2008, but that petition was

12    summarily denied. (*See* Dkt. 43, LD 8 and LD 9.)  Thus, the California courts failed to issue

13    a reasoned decision on this issue, and this Court must independently review the record and

14    Supreme Court law to determine whether the state courts' denial of petitioner's claim was

15    reasonable.  *See Delgado*, 223 F.3d at 982.

16       The Supreme Court has held that pre-indictment delay following dismissed charges

17    may be scrutinized under the Fifth Amendment's Due Process Clause.  *MacDonald*, 456 U.S.

18    at 7.  The Supreme Court and this Circuit have established a two-prong test for determining if

19    a pre-indictment delay rises to the level of a denial of due process.  First, the defendant has

20    the heavy burden of proving that actual, non-speculative prejudice resulted from the delay.

21    *United States v. Lovasco*, 431 U.S. 783, 789 (1977); *United States v. Moran*, 759 F.2d 777,

22    782 (9th Cir. 1985).  Second, the court must balance the government's reasons for causing the

01  delay against the demonstrated prejudice to the defendant.  *Lovasco*, 431 U.S. at 789-90;

02  *Moran*, 759 F.2d at 781-82.

03         Here, petitioner's due process claim fails because he has not shown that actual, non-

04  speculative prejudice resulted from the absence of Ms. Fedor's testimony at his trial.  Aside

05  from petitioner's bare assertions, there is no evidence in the record that Ms. Fedor was

06  physically present at petitioner's house on April 19, 1998, when J.S. was there.  There is also

07  little evidence in the record to establish that Ms. Fedor, if available to testify at all, would

08  have testified on his behalf.  *See United States v. Wallace*, 848 F.2d 1464, 1470 (9th Cir.

09  1988) (finding no actual prejudice where there was little indication in the record that the

10  witness would have testified favorably for the defendant, if he had testified at all).

11         In any event, even assuming *arguendo* that Ms. Fedor could and would have testified

12  on petitioner's behalf, it would not have changed the jury's verdict.  As discussed above,

13  petitioner admits that he left Ms. Fedor outside on the front porch of his house for

14  approximately ten minutes, and was alone with J.S. inside his house, where the alleged

15  molestation took place.  He does not allege that Ms. Fedor accompanied him inside or even

16  stepped inside the house when J.S. was present.  As a result, petitioner is unable to show how

17  Ms. Fedor was a "key eye witness" to the events that would have contradicted J.S.'s

18  testimony about the molestation, or could have corroborated petitioner's assertions that J.S.

19  was lying.

20         Accordingly, petitioner's assertion of prejudice is merely speculative.  Without more,

21  an allegation that a witness' testimony was lost is not enough.  Because we conclude that

22  petitioner failed to establish actual prejudice under the first prong of the test, we do not

REPORT AND RECOMMENDATION - 26

01 consider the reasons for and the length of the delay under the second prong. *See id.* The

02 California Supreme Court's decision to deny relief as to this claim was therefore consistent

03 with and a reasonable application of clearly established Federal law.

04       6.    *Ineffective Assistance of Counsel*

05       Petitioner contends his trial counsel was ineffective when he failed to investigate the

06 facts surrounding the 1998 offenses. (*See* Dkt. 38 at 33-37.) If trial counsel had properly

07 investigated this case, petitioner claims he would have been able to demonstrate "actual

08 prejudice" under the Speedy Trial Act. Specifically, petitioner claims trial counsel would

09 have learned that in 1998 petitioner appeared in court with his prior attorney, Lorie Teichert,

10 on five separate occasions, and that the only eye-witness to the events involving J.S., who

11 would have exonerated petitioner, had passed away in 2002. (*See id.*)

12       Respondent contends petitioner's claim is without merit and while the California

13 Supreme Court denied review without comment, such decision was not contrary to or

14 involved an unreasonable application of clearly established federal law, nor was it based upon

15 an unreasonable determination of the facts. (*See* Dkt. 41 at 20-22.) Because there is no

16 underlying reasoned state court decision on this issue, this Court must independently review

17 the record to determine whether the California's Supreme Court's decision was reasonable in

18 light of clearly established Supreme Court law. *See Delgado*, 223 F.3d at 982.

19       In order to establish an ineffective assistance of counsel claim, petitioner must

20 demonstrate under *Strickland v. Washington*: (1) "that counsel's performance was deficient"

21 and (2) "that the deficient performance prejudiced the defense." 466 U.S. 668, 687 (1984).

22

01   As petitioner is required to satisfy both prongs in order to prevail under *Strickland*, this Court

02   may dispose of his claim if he fails to satisfy either prong of the two-part test. *Id.* at 697.

03         Turning first to the "performance prong," petitioner "must show that counsel's

04   representation fell below an objective standard of reasonableness." *Id.* at 688. Courts must be

05   "highly deferential" to counsel's performance such that "the defendant must overcome the

06   presumption that, under the circumstances, the challenged action might be considered sound

07   trial strategy." *Id.* at 689 (internal quotation marks omitted).  The Supreme Court in

08   *Strickland* recognized that an attorney's duty to provide reasonably effective assistance of

09   counsel includes the "duty to make reasonable investigations or to make a reasonable decision

10   that makes particular investigations unnecessary." *Id.* at 691; *see also* ABA Standards for

11   Criminal Justice: Prosecution Function and Defense Function 4-4.1(a) (3d ed. 1993)

12   ("Defense counsel should conduct a prompt investigation of the circumstances of the case and

13   explore all avenues leading to facts relevant to the merits of the case. . . .").  Trial counsel's

14   investigation, however, depends a great deal upon the information provided to him by

15   defendant.  As noted in *Strickland*:

16           The reasonableness of counsel's actions may be determined or
        substantially influenced by the defendant's own statements or

17           actions.  Counsel's actions are usually based, quite properly, on
        informed strategic choices made by the defendant and on

18           information supplied by the defendant. In particular, what
        investigation decisions are reasonable depends critically on such

19           information.

20   *Strickland,* 466 U.S. at 691; *see also Howard v. Clark*, --- F.3d ----, 2010 WL 2366012 (9th

21   Cir. Jun 15, 2010); *Jones v. Wood,* 114 F.3d 1002, 1011 (9th Cir. 1997).

22

01        Here, based upon petitioner and his paralegal's own admissions, petitioner failed to

02   recognize the value of the allegedly exculpatory eye-witness, Doris Fedor, until almost eleven

03   years later.  (*See* Dkt. 38, Exh. E at 4-5 and Exh. L at 2.)  It is difficult to understand how

04   petitioner could fail to ask trial counsel to investigate petitioner's only defense witness, if in

05   fact she was the "key" to his defense.  More importantly, no case, especially a U.S. Supreme

06   Court case, holds that defendant's trial counsel is required to extract information from his

07   client of which trial counsel is unaware.  As set forth above, the burden remains on the

08   defendant to inform his trial counsel of relevant information so that he could make informed

09   and strategic decisions based upon the information provided to him.

10        Even if trial counsel had carefully investigated the 1998 molestation, it is unclear how

11   such an investigation would have assisted petitioner in this case.  For example, petitioner does

12   not know whether trial counsel consulted with his 1998 attorney, or what that prior attorney

13   would have said if asked.  Petitioner's 1998 attorney simply appeared with petitioner on

14   multiple occasions before a complaint had been filed against him.  It is extremely unlikely

15   that she would have had any relevant knowledge to impart.  Moreover, petitioner does not

16   present any evidence, aside from a bare assertion that Ms. Fedor was an eyewitness whose

17   testimony would have exonerated him.  As discussed in Section V.5.B above, this statement is

18   pure speculation and does not constitute actual prejudice with regard to his due process claim.

19   Similarly, without more evidence to support his contention here, petitioner is unable to satisfy

20   the prejudice prong of *Strickland*.  Because petitioner fails to show that the state court's

21   decision on this issue was contrary to or an unreasonable application of *Strickland*, I

22   recommend the court deny this claim as well.

01        VI.   CERTIFICATE OF APPEALABILITY

02        The federal rules governing habeas cases brought by state prisoners were recently

03  amended to require a district court that denies a habeas petition to grant or deny a certificate

04  of appealability in the ruling.  *See* Rule 11(a), Rules Governing § 2254 Cases, 28 U.S.C.

05  § 2254 (effective December 1, 2009).  Previously, the Ninth Circuit held that a prisoner was

06  not required to obtain a certificate of appealability from administrative decisions, such as a

07  denial of parole.  *See White v. Lambert*, 370 F.3d 1002, 1010 (9th Cir. 2004); *Rosas v.*

08  *Nielsen*, 428 F.3d 1229, 1231-32 (9th Cir. 2005).

09        In *Hayward* the Ninth Circuit overruled "those portions of *White* and *Rosas* which

10  relieve a prisoner from obtaining a certificate of appealability."  *Hayward*, 603 F.3d at 554.  A

11  certificate of appealability is now required to "confer jurisdiction on [the Ninth Circuit] in an

12  appeal from a district court's denial of habeas relief in a § 2254 case, regardless of whether

13  the state decision to deny release from confinement is administrative or judicial."  *Id.*

14        In order to obtain a certificate of appealability, a petitioner must make "a substantial

15  showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Specifically, if a

16  court denies a petition, a certificate of appealability may only be issued "if jurists of reason

17  could disagree with the district court's resolution of his constitutional claims or that jurists

18  could conclude the issues presented are adequate to deserve encouragement to proceed

19  further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  *See also Slack v. McDaniel*, 529

20  U.S. 473, 484 (2000).  While the petitioner is not required to prove the merits of his case, he

21  must demonstrate "something more than the absence of frivolity or the existence of mere

22  good faith on his . . . part."  *Miller-El*, 537 U.S. at 338.

01    For the reasons set forth in the discussion of the merits in my Report and

02  Recommendation, jurists of reason would not find the result recommended in this case

03  debatable.  Accordingly, I recommend that the Court deny petitioner a certificate of

04  appealability on the issue of whether the state courts' rejection of petitioner's claims was

05  contrary to, or involved an unreasonable application of, clearly established Federal law as

06  determined by the Supreme Court of the United States, or resulted in a decision that was

07  based on an unreasonable determination of the facts in light of the evidence presented.

08    VII.    CONCLUSION

09    For all of these reasons, I recommend this Court find that petitioner's second amended

10  petition fails on the merits.  Accordingly, I recommend the Court find that the California

11  courts' decisions denying relief as to petitioner's claims were not contrary to, or an

12  unreasonable application of, clearly established Federal law.  The Court should therefore enter

13  an Order approving and adopting this Report and Recommendation, denying the second

14  amended petition, and directing that judgment be entered dismissing this action with

15  prejudice.

16    This Report and Recommendation is submitted to the United States District Judge

17  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen (14)

18  days of being served with this Report and Recommendation, any party may file written

19  objections with this Court and serve a copy on all parties.  Such a document should be

20  captioned "Objections to Magistrate Judge's Report and Recommendation."  Any response to

21  the objections shall be filed and served within fourteen (14) days after service of the

22  objections.  Failure to file objections within the specified time may waive the right to appeal

01  the District Court's Order.   *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).  A proposed

02  Order accompanies this Report and Recommendation.

03          DATED this 4th day of August, 2010.

04

05                                                    _____

06                                                    JOHN L. WEINBERG
                                                      United States Magistrate Judge

07

08

09

10

11

12

13

14

15

16

17

18

19

20

21

22

REPORT AND RECOMMENDATION - 32